# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

TPI DESERT CARMEL, LLC, a Michigan
limited liability company,

        Debtor.

Case No.: 1:04-CV-00417-RHB

**ORDER CONFIRMING RESULTS OF AUCTION AND APPROVING SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

On this date, the Court considered the Motion to Confirm Results of Auction and Approve Sale of Property Free and Clear of Liens, Claims, and Encumbrances (the "Sale Motion")[1] filed by TPI Desert Carmel, LLC (the "Debtor"); and the Court having determined the relief requested in the Sale Motion is in the best interest of the Debtor, its estate, its creditors and other parties in interest; and upon the record of the hearing (the "Sale Hearing") to approve the Sale Motion, and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

    FOUND, CONCLUDED AND DECLARED THAT:[2]

    A.    This Court has jurisdiction over this matter and over the property of the Debtor and its respective bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334(b); that this matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O); and that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Except as otherwise defined herein, all capitalized terms shall have the meaning ascribed in the Sale Motion.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate, pursuant to Bankruptcy Rule 7052.

B. As evidenced by the certificates of service filed with the Court, and based on the representations of counsel at the Sale Hearing, good and sufficient notice of the Sale Motion, the hearing held thereon, the Procedures Order, the Agreement (as defined below) and the Auction has been given, was in accordance with the Procedures Order and is in compliance with Bankruptcy Rules 2002, 6004, and 9014. No additional or further notice is required.

C. As demonstrated by (i) the evidence proffered or adduced at the Sale Hearing and (ii) the seeking of higher and better offers for the Purchased Assets through notice of the Sale Motion and Pursuant to a public auction conducted on April 13, 2005, the opportunity to make higher and better offers for the Property. In addition, on or about March 18, 2005, the Debtor served the Procedures Order, the Agreement and the Sale Motion, to, among others, each of the entities known to the Debtor to have previously expressed an interest in the Property.

D. The final bids of all parties who were qualified to bid at the auction were as follows:

1. **Winning Bid**: Bianco Partners, LLC, on the terms set forth in the Purchase and Sale Agreement that was attached as Exhibit "1" to the Sale Motion (the "Stalking Horse Agreement") with the following modifications (all capitalized terms in the following sub-paragraphs not otherwise defined shall have the meaning ascribed to them in the Stalking Horse Agreement):

    a. the Purchase Price is changed to $13,500,000.00;

    b. the Purchaser shall transfer $13,400,000.00 (in addition to the $100,000.00 Earnest Money Deposit already deposited with the Escrow Agent) to be received by the Escrow Agent by 5:00 p.m. Central Time April 14, 2005;

      c.      the Closing Date shall take place two (2) days after entry of this Order;

      d.      all of the terms and conditions of the Bankruptcy Sale Procedures specified in section 3.1 of the Stalking Horse Agreement are deemed satisfied;

      e.      this Order is the Sale Order; and

      f.      all other deadlines and requirements specified in the Stalking Horse Agreement that conflict with the modifications set forth in this paragraph D.1 are modified and/or waived as appropriate to conform to these modifications.

2.    **Second Place Bid**: Summit Financial Corp., on the terms set forth in the Stalking Horse Agreement with the following modifications (all capitalized terms in the following sub-paragraphs not otherwise defined shall have the meaning ascribed to them in the Stalking Horse Agreement):

      a.      the Purchaser is changed to Summit Financial Corp.;

      b.      the Purchase Price is changed to $16,500,000.00;

      c.      the Purchaser shall transfer $500,000.00 (in addition to the $100,000.00 Earnest Money Deposit already deposited with the Escrow Agent) to be received by the Escrow Agent by 5:00 p.m. Central Time April 18, 2005;

      d.      the Closing Date shall take place within fifteen (15) days after entry of this Order;

      e.      all of the terms and conditions of the Bankruptcy Sale Procedures specified in section 3.1 of the Stalking Horse Agreement are deemed satisfied;

      f.      this Order is the Sale Order; and

g. all other deadlines and requirements specified in the Stalking Horse Agreement that conflict with the modifications set forth in this paragraph D.2 are modified and/or waived as appropriate to conform to these modifications.

3. **Third Place Bid**: Calabrea Development, LLC, on the terms set forth in the Stalking Horse Agreement with the following modifications (all capitalized terms in the following sub-paragraphs not otherwise defined shall have the meaning ascribed to them in the Stalking Horse Agreement):

a. the Purchaser is changed to Calabrea Development, LLC;

b. the Purchase Price is changed to $10,500,000.00;

c. the Purchaser shall transfer $10,400,00.00 (in addition to the $100,000.00 Earnest Money Deposit already deposited with the Escrow Agent) to be received by the Escrow Agent by 5:00 p.m. Central Time April 20, 2005;

d. all of the terms and conditions of the Bankruptcy Sale Procedures specified in section 3.1 of the Stalking Horse Agreement are deemed satisfied;

e. this Order is the Sale Order;

f. all other deadlines and requirements specified in the Stalking Horse Agreement that conflict with the modifications set forth in this paragraph D.3 are modified and/or waived as appropriate to conform to these modifications;

g. Calabrea Development, LLC waives any right to appeal the Report and Recommendation entered in this case on April 13, 2005 [Docket No. 86] along with any order subsequently entered in this case on any of the matters contained in that Report and Recommendation; and

  h.  Calabrea Development, LLC waives any claims or causes of action of any kind, known or unknown, against the Debtor, the Receiver, the Examiner, Trade Partners, Inc., or any of the other entities that are the subject of the federal receivership case pending in this Court styled *SEC v. Trade Partners, Inc.*, Civil Action No. 1:03-CV-0236.

  4.  **Fourth Place Bid**: Westminster Partners, LLC, on the terms set forth in the Stalking Horse Agreement with the following modifications (all capitalized terms in the following sub-paragraphs not otherwise defined shall have the meaning ascribed to them in the Stalking Horse Agreement):

    a.  the Purchaser is changed to Westminster Partners, LLC;

    b.  the Purchase Price is changed to $15,000,000.00;

    c.  all of the terms and conditions of the Bankruptcy Sale Procedures specified in section 3.1 of the Stalking Horse Agreement are deemed satisfied; and

    d.  this Order is the Sale Order.

  5.  **Fifth Place Bid**: Ply-Far, LLC, on the terms set forth in the Stalking Horse Agreement with the following modifications (all capitalized terms in the following sub-paragraphs not otherwise defined shall have the meaning ascribed to them in the Stalking Horse Agreement):

    a.  the Purchaser is changed to Ply-Far, LLC;

    b.  the Purchase Price is changed to $11,000,000.00;

    c.  all of the terms and conditions of the Bankruptcy Sale Procedures specified in section 3.1 of the Stalking Horse Agreement are deemed satisfied; and

        d.        this Order is the Sale Order.

6. **Sixth Place Bid**: Grande Real Estate Holdings, L.L.C., on the terms set forth in the Stalking Horse Agreement with the following modifications (all capitalized terms in the following sub-paragraphs not otherwise defined shall have the meaning ascribed to them in the Stalking Horse Agreement):

        a.        the Purchaser is changed to Grande Real Estate Holdings, L.L.C.;

        b.        the Purchase Price is changed to $8,300,000.00;

        c.        all of the terms and conditions of the Bankruptcy Sale Procedures specified in section 3.1 of the Stalking Horse Agreement are deemed satisfied; and

        d.        this Order is the Sale Order.

All of the foregoing bidders were deemed to be "Qualified Bidders" as defined in the Sale Procedures and were authorized to bid on the Property at the Sale Hearing in accordance with the terms of the Sale Procedures.

E. The offer by the Purchaser (as defined below) to Purchase the Property contained in the Agreement, and confirmed at the Auction, represents the highest and best offer for the Property.

F. The Debtor has exercised sound and considered business judgment in deciding to enter into the Agreement and to sell the Property to the Purchaser in accordance with the Agreement.

G. The Debtor has demonstrated both (i) good, considered and sound business purpose and justification, and (ii) sufficient and compelling circumstances for the sale pursuant to Bankruptcy Code section 363(b) prior to, and outside of, a plan of reorganization in that,

among other things, a sale of the Property at this time pursuant to Bankruptcy Code section 363(b) is wholly consistent with the Debtor's Chapter 11 liquidation strategy and will maximize the value of the Debtor's estate for the benefit of all parties involved. Delaying approval of the sale to the Purchaser may result in the termination of the Agreement by the Purchaser, thereby forcing the Debtor to seek alternative transactions which, to date, have promised far less value for creditors.

H.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested parties, including, but not limited to: (i) the official committee of unsecured creditors appointed in this case and its counsel (the "Unsecured Creditors' Committee"), if any; (ii) the Office of the United States Trustee; (iii) all entities (or counsel therefore) known to have asserted any lien, claim, encumbrance or option of any kind on the Property; (iv) all federal, state, and local regulatory or taxing authorities which the debtor reasonably knows to have an interest in the Property; (v) all parties who have expressed a bona fide interest in acquiring the Property; and (vi) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

I.  The Purchaser is not an "insider" of the Debtor, as that term is defined in Bankruptcy Code section 101.

J.  The Debtor and Purchaser negotiated the Agreement at arm's-length and in good faith, without collusion. The Purchaser has disclosed the possibility of entering into agreements with third parties to sell certain parts of the Property. The Purchaser is a good faith purchaser and is entitled to the protections of Bankruptcy Code section 363(m). The Purchaser has been acting in good faith within the meaning of Bankruptcy Code section 363(m) at all times after the entry of the Procedure Order in closing the transactions contemplated by the Agreement.

K. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Agreement or the transaction contemplated thereunder to be avoided or challenged pursuant to Bankruptcy Code section 363(n).

L. The Purchase Price is fair and reasonable and constitutes fair and adequate consideration for the Property.

M. Sufficient cause has been shown to allow the sale of the Property free and clear of all interests, liens, claims, encumbrances and options pursuant to Bankruptcy Code section 363(f), other than liens to secure payment of 2005 property taxes. Several of the interests asserted against the Property according to the deed records appear to be invalid, but in any event are in bona fide dispute and are the subject of adversary proceedings filed by the Debtor. The total amount of the remaining liens against the Property are less than the purchase price proposed in the Agreement. In addition, the Debtor stipulated for the purposes of the Sale Hearing that the mortgages of New Era Life Insurance Company, New Era Life Insurance Company of the Midwest, and Philadelphia Life Insurance Company were uncontested. The precise terms of that stipulation are set forth in Docket No. 33 (the "Stipulation").[3] Therefore, the requirements of 11 U.S.C. § 363(f)(3) and (4) are satisfied.

N. The highest and best price for the Property is represented by the Purchase Price under the Agreement and it is therefore in the best interest of the Debtor, its respective creditors, and its respective estate that the Court enter this order (the "Sale Order") authorizing under sections 105(a), 363, and 1146(c) of the Bankruptcy Code, (1) the Debtor who is a party to the Agreement to enter into and comply with the terms and conditions of the Agreement; (2) the sale

---

[3] The sale is expressly subject to the terms of the Stipulation, except that the net proceeds of the sale of the Property will be held by the Receiver in an interest-bearing account pending further order of the Court.

of the Property to the Purchaser, free and clear of (a) all mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, equities, leases, licenses, shares, purchase or sales options, conditions, restrictions or charges of any kind or nature, if any, including, but not limited to, any receipt of income or other exercise of any attributes of ownership including all "interests" in the Property held by third parties within the meaning of section 363(f) of the Bankruptcy Code (the foregoing collectively referred to herein as "Liens") other than liens to secure payment of 2005 property taxes, and (b) (i) all debts arising in any way in connection with any acts or omissions of the Debtor, (ii) any and all claims (as that terms is defined in section 101(5) of the Bankruptcy Code) against the Debtor arising on or prior to the date of the Closing of the sale transaction under the Agreement, and (iii) any and all obligations, demands, liabilities, guaranties, options, rights, contractual commitments, interests and matters of or against the Debtor of any kind and nature, whether arising prior to or subsequent to the commencement of this case, whether matured or unmatured, liquidated or unliquidated, whether known or unknown and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, those of the kinds specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code (the foregoing collectively referred to herein as "Claims").

O. Upon the issuance of this Sale Order (1) the Debtor has full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, and the sale of the Property to the Purchaser by the Debtor notwithstanding any deficiency in corporate action of the Debtor; (2) the Debtor has all the corporate power and authority necessary to consummate the transaction contemplated by the Agreement and all other documents contemplated therein; and (3) no consents, approvals or orders are required for the Debtor to

consummate the transaction contemplated by the Agreement. Any objections hereto regarding Debtor's lack of authority or non-compliance with corporate documents are hereby overruled and deemed without effect.

P. As a condition to the Purchase of the Property by the Purchaser, the Purchaser requires that the Property be sold free and clear of all Liens and Claims (other than liens to secure payment of 2005 property taxes), and that the Purchaser has no liability for any liabilities of the Debtor. The Purchaser would not enter into and consummate the sale, thus adversely affecting the Debtor's estate and its respective creditors and interfering with the Debtor's Chapter 11 exit strategy, if the sale of the Property to the Purchaser was not free and clear of all Liens and Claims against the Debtor and the Property, other than as specifically provided in the Agreement, if any, or this Sale Order, or if the Purchaser was or would be liable for liabilities of the Debtor other than as specifically assumed by the Purchaser or otherwise permitted under the Agreement.

Q. The sale and transfer of the Property contemplated by the Agreement and subject to the provisions herein (1) are or will be legal, valid and effective transfers of property of the Debtor's estate to the Purchaser or Purchaser's designees with all right, title and interest of the Debtor in and to the Property free and clear of all Liens and Claims other than liens to secure payment of 2005 property taxes.

R. The relief requested in the Motion is in the best interest of the Debtor, its estate and its creditors.

S. All findings of fact and conclusions of law made by the Court at the Sale Hearing are incorporated herein; and it is therefore

**ORDERED** that the Sale Motion is granted in all respects; and it is further

**ORDERED** that the term "Purchaser" as used herein shall mean the party that made the Winning Bid set forth above, and the term "Agreement" as used herein shall mean the terms specified above corresponding to the Winning Bid.  However, if the party making the Winning Bid fails to consummate the sale, the terms Purchaser and Agreement shall refer to the Second Place Bid set forth above, the Debtor will be authorized to close the sale of the Property on the terms of the Second Place Bid, and all terms of this Order will apply as if the Second Place Bid were the Winning Bid; if the party making the Second Place Bid fails to consummate the sale, the terms Purchaser and Agreement shall refer to the Third Place Bid set forth above, the Debtor will be authorized to close the sale of the Property on the terms of the Third Place Bid, and all terms of this Order will apply as if the Third Place Bid were the Winning Bid; if the party making the Third Place Bid fails to consummate the sale, the terms Purchaser and Agreement shall refer to the Fourth Place Bid set forth above, the Debtor will be authorized to close the sale of the Property on the terms of the Fourth Place Bid, and all terms of this Order will apply as if the Fourth Place Bid were the Winning Bid; if the party making the Fourth Place Bid fails to consummate the sale, the terms Purchaser and Agreement shall refer to the Fifth Place Bid set forth above, the Debtor will be authorized to close the sale of the Property on the terms of the Fifth Place Bid, and all terms of this Order will apply as if the Fifth Place Bid were the Winning Bid; and if the party making the Fifth Place Bid fails to consummate the sale, the terms Purchaser and Agreement shall refer to the Sixth Place Bid set forth above, the Debtor will be authorized to close the sale of the Property on the terms of the Sixth Place Bid, and all terms of this Order will apply as if the Sixth Place Bid were the Winning Bid.  Nothing in this paragraph shall be construed to require any of the parties making the Second Place Bid, the Third Place Bid, the Fourth Place Bid, the Fifth Place Bid, or the Sixth Place Bid to purchase the Property.

**ORDERED** that pursuant to Bankruptcy Code section 363(b), the Agreement is approved in all respects subject to the provisions herein and in the record at the Sale Hearing, and it is further

**ORDERED** that all objections and responses to the Sale Motion that have not been overruled, withdrawn, waived or settled, and all reservation of rights included therein, are hereby denied on the merits except as otherwise provided for in the record at the Sale Hearing; and it is further

**ORDERED** that pursuant to Bankruptcy Code section 363(b), the Debtor is hereby authorized (i) to sell the Property to the Purchaser or to Purchaser's designees in accordance with and subject to the terms and conditions of the Agreement and the provisions herein and in the record at the Sale Hearing free and clear of all Liens and Claims (other than liens to secure payment of 2005 property taxes), (ii) to transfer and assign all right, title, and interest to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Agreement to the Purchaser or Purchaser's designees, (iii) to execute and deliver, and empower fully to perform under, consummate and implement the Agreement, together with all additional instruments and documents contemplated by the Agreement or that may be reasonably necessary or desirable to implement the Agreement, and (iv) to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser the Property, or as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Agreement; and it is further

**ORDERED** that pursuant to Bankruptcy Code sections 105(a) and 363(f), and subject to the terms and conditions of the Agreement, the provisions herein and in the record at the Sale

Hearing, the Property shall be transferred to the Purchaser upon and effective as of the Closing and shall be free and clear of all Liens and Claims (other than liens to secure payment of 2005 property taxes). All such Liens and Claims (other than liens to secure payment of 2005 property taxes) shall be released, terminated and discharged as to the Property and, to the extent required by Bankruptcy Code section 363(f), shall attach to the net proceeds of the sale of the Property paid by the Purchaser (the "Proceeds") in the order of their priority, with the same validity, force and effect they now have as against the Property. The net proceeds from the sale of the Property shall be held by the Receiver pending further Order of this Court; and it is further

**ORDERED** that the Debtor is hereby authorized to consent to the transfer on the Closing Date of certain parts of the Property to any third party designated by Purchaser and the transfer shall constitute a legal, valid and effective transfer of the Property and shall vest the designees with all right, title and interest of the Debtor in and to such Property; and it is further

**ORDERED** that except as expressly provided in the Agreement, neither Purchaser nor any of the Purchaser's designees are in any way assuming or becoming responsible for any liability of the Debtor, including any and all liabilities arising in connection with the Property; and it is further

**ORDERED** that the Purchaser is a good-faith purchaser entitled to the protections of Bankruptcy Code section 363(m) with respect to the transaction contemplated by the Agreement, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Property will not affect the validity of the sale to the Purchaser, unless such authorization as granted herein is duly stayed pending such appeal prior to the Closing; and it is further

**ORDERED** that the Purchase Price for the Property is fair and reasonable, constitutes reasonably equivalent value and fair consideration for the assets purchased and the transaction contemplated by the Agreement, and is not subject to challenge under Bankruptcy Code section 363(n); and it is further

**ORDERED** except as to parties which received the Notice of Auction, that the Purchaser's discussions, if any, with third parties do not violate section 363(n) and do not affect its status as good faith purchasers; and it is further

**ORDERED** that the Debtor, including but not limited to its Court-appointed Receiver, is hereby authorized and directed to take any and all actions necessary to effectuate and comply with the terms of the Agreement; and it is further

**ORDERED** that with the exception of any liabilities specifically assumed under the Agreement and liens to secure payment of 2005 property taxes, all persons and entities holding Liens or Claims of any kind and nature against the Debtor or with respect to the Property arising under or out of or in connection with or in any way relating to the Debtor, prior to the Closing of the Property, are hereby barred, estopped and permanently enjoined from asserting such Liens and Claims against the Property, the Purchaser or the Purchaser's designees, their successors, designees or assigns, or their respective subsidiaries, shareholders, members, officers, directors or trustees; and it is further

**ORDERED** that this Sale Order (a) is and shall be effective as a determination that, on the Closing Date and except as specifically provided in the Agreement, all Liens and Claims existing on the Property before the Closing (other than liens to secure payment of 2005 property taxes) have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of

all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Property; and it is further

**ORDERED** that except as otherwise expressly provided in the Agreement or related instruments or as otherwise provided in this Sale Order, the Purchaser shall not have any liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Property. Without limiting the effect of the foregoing, the transfer of the Property does not and will not subject the Purchaser to any liability for claims against the Debtor or the Property, arising prior to the Closing Date, including, but not limited to, claims for successor or vicarious liability, by reason of such transfer under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transactions. Neither the Purchaser nor the Purchaser's designees shall be deemed, as a result of any action taken in connection with the Agreement, to: (a) be the successor of the Debtor; (b) have, *de facto* or otherwise, merged with or into the Debtor; (c) be a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor; or (d) be responsible for any liability of the Debtor, except as specifically provided for in the agreement or in this Sale Order, and it is further

**ORDERED** that this Court retains jurisdiction (a) to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith, (b) to compel delivery of the

Property to the Purchaser, (c) to resolve any disputes arising under or related to the Agreement, (d) to interpret, implement and enforce the provisions of this Sale Order, and (e) to enforce the terms of the Stipulation between Debtor and New Era Entities; and it is further

**ORDERED** that nothing contained in any chapter 11 plan confirmed in this case or the order of confirmation confirming any chapter 11 plan, nor any dismissing of the case or converting it to a chapter 7 liquidation shall conflict with or derogate from the provisions of the Agreement, any document or instrument executed in connection therewith, or the terms of this Sale order; and it is further

**ORDERED** that the failure specifically to include any particular provisions of the Agreement or any of the documents, agreements or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provisions, document, agreement or instrument, it being the intent of the Court that the Agreement and each such document, agreement or instrument be authorized and approved in its entirety; and it is further

**ORDERED** that the Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate; and it is further

**ORDERED** that pursuant to Bankruptcy Rules 6004(g) and 7062, this Sale Order shall not be stayed for ten (10) days after entry, and notwithstanding any provision of the Bankruptcy Code or Bankruptcy Rules to the contrary, this Sale Order shall be effective and enforceable immediately upon entry; and it is further

**ORDERED** that this Sale Order shall inure to the benefit of the Purchaser, the Debtor and their respective successors and assigns, including, but not limited to, any chapter 11 or chapter 7 trustee that may be appointed in the Debtor's case and shall be binding upon any trustee, party, entity or other fiduciary that may be appointed in connection with this case, whether under chapter 11 or chapter 7 of the Bankruptcy Code; and it is further

**ORDERED** that the transaction contemplated by the Agreement is exempt from any transfer, stamp or similar tax or any so-called "bulk sale" law in all necessary jurisdictions arising as a result of or in connection with Debtor's sale and transfer of the Property to the Purchaser; and it is further

**ORDERED** that each and every federal, state and local governmental agency, department or entity is hereby directed to accept the filing of any and all documents and instruments necessary and appropriate to implement, effectuate or consummate the transaction contemplated by the Agreement and this Sale Order; and it is further

**ORDERED** that the terms of the Stipulation apply to the transactions approved and authorized by this Order; and it is further

**ORDERED** that the Debtor shall be and hereby is authorized to pay all property taxes owed on the Property for tax years 2004 and earlier as provided in the Agreement; and it is further

**ORDERED** that the Debtor is authorized to give the Purchaser a credit toward the purchase price of the Property in an amount equal to the pro rated 2005 property taxes as provided in the Agreement; and it is further

**ORDERED** that the provisions of this Sale Order are nonseverable and mutually dependent; and it is further

**ORDERED** that nothing in this Sale Order shall be construed as altering the Agreement or the obligations of the Debtor and Purchaser pursuant thereto.

**IT IS SO ORDERED.**

DATE:  May 4, 2005  .

                            /s/ Robert Holmes Bell
THE HONORABLE ROBERT HOLMES BELL,
CHIEF UNITED STATES DISTRICT COURT JUDGE